IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WESTERN RADIO SERVICES CO., an                    Civil No. 05-159-AA
Oregon corporation,                                   OPINION AND ORDER

         Plaintiff,

    vs.

QWEST CORPORATION, a Colorado
corporation; THE PUBLIC UTILITY
COMMISSION OF OREGON; LEE BEYER,
Chair; RAY BAUM, Commissioner; and
JOHN SAVAGE, Commissioner, in their
individual capacities and in their
official capacities as Commissioners
of the Public Utility Commission
of Oregon,

         Defendants.
_____

Marianne Dugan
Attorney at Law
259 E. 5th Ave., Suite 200-D
Eugene, Oregon 97401
    Attorney for plaintiff

Gregory B. Monson
Stoel Rives LLP
201 S. Main Street, Suite 1100
Salt Lake City, Utah 84111

Page 1 - OPINION AND ORDER

Alex M. Duarte
Qwest Corporate Counsel
421 SW Oak Street, Room 810
Portland, Oregon 97204
    Attorneys for defendant Qwest Corporation

John Kroger
Attorney General
Michael T. Weirich
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
    Attorneys for defendants Public Utility Commission,
    Lee Beyer, Ray Baum and John Savage

AIKEN, Judge:

Plaintiff Western Radio Services ("Western") brings a complaint for declaratory and injunctive relief pursuant to 47 U.S.C. § 252(e)(6) of the Telecommunications Act of 1996, Pub. Law. No. 104-104, 110 Stat. 56 (1996), codified at 47 U.S.C. §§ 151 et seq. (the "Act"); and 42 U.S.C. § 1983.

Defendants Qwest Corporation ("Qwest") and the Oregon Public Utility Commission, Lee Beyer, Ray Baum and John Savage (collectively the "PUC") move to dismiss Western's Second Cause of Action alleging that Qwest failed to negotiate in good faith because the PUC has not addressed this claim as required by Western Radio Servs. Co. v. Qwest Corp., 530 F.3d 1186 (9th Cir. 2008). Additionally, all defendants move to dismiss Western's request for jury trial because this matter is before the court on appellate review. Finally, the PUC moves to dismiss Western's 42 U.S.C. § 1983 claim as scrivener's error. The court heard oral

Page 2 - OPINION AND ORDER

argument on April 27, 2009.  The motions to dismiss are granted.

<u>STATUTORY FRAMEWORK</u>

Under the Act "incumbent local exchange carriers," are obligated to provide "interconnection" to newer local exchange carriers, called "requesting" carriers in the statute.  47 U.S.C. § 251(c)(2).

If a carrier requests interconnection, the requesting carrier and the incumbent carrier to whom the request is made have a duty to "establish reciprocal compensation arrangements" for interconnection.  47 U.S.C. § 251(b)(5).  In creating such an interconnection agreement, both the incumbent carrier and the requesting carrier have a "duty to negotiate in good faith . . . the particular terms and conditions" of such agreements.  47 U.S.C. § 251(c)(1).  The Act sets out a procedural framework for these negotiations: First, a requesting carrier must make a request for interconnection to an incumbent carrier, which "may negotiate and enter into a binding agreement with the requesting . . . carrier . . . without regard" to the substantive standards of 47 U.S.C. § 251.  47 U.S.C. § 252(a)(1).  The parties to the negotiation may, if they wish, ask a state public utilities commission "to mediate any differences arising in the course of the negotiation."  47 U.S.C. § 252(a)(2).

If the parties cannot reach agreement through voluntary negotiations or mediation, either may "petition a State

commission to arbitrate any open issues." 47 U.S.C. § 252(b)(1).
In resolving the open issues through compulsory arbitration, a
state commission must ensure that its resolution "meet[s] the
requirements of section 251" and may "impos[e] appropriate
conditions" to ensure the requirements of 47 U.S.C. § 251 are
met.  47 U.S.C. §§ 252(b)(4)(C), (c)(1).  If during arbitration a
party refuses "to participate further in the negotiations, to
cooperate with the State commission . . ., or to continue to
negotiate in good faith in the presence, or with the assistance,
of the State commission," such action "shall be considered a
failure to negotiate in good faith."  47 U.S.C. § 252(b)(5).
Section 252 does not specify what remedy, if any, is available
for failure to negotiate in good faith.

     Once an interconnection agreement has been adopted either by
negotiation or after compulsory arbitration, it must "be
submitted for approval" to the state commission, which must
either "approve or reject the agreement."  47 U.S.C. § 252(e)(1).
Finally, the 1996 Act provides for judicial "[r]eview of State
commission actions":

>     In any case in which a [Public Utilities Commission]
> makes a determination under this section, any party
> aggrieved by such determination may bring an action in an
> appropriate Federal district court to determine whether the
> agreement or statement meets the requirements of section 251
> of this title and this section.

47 U.S.C. § 252(e)(6).

FACTUAL AND PROCEDURAL BACKGROUND

        Western is a licensed Commercial Mobile Radio Service
provider incorporated under the laws of Oregon with its principle
place of business in Bend, Oregon.  Western alleges that
negotiations under the Act between Qwest's predecessor, US
West, and Western began in August 1996.  Supplemental Complaint,
¶ 17.  Negotiations resolved some, but not all, of the issues
between the parties and so in March 2004, Western filed a
petition with the PUC for arbitration pursuant to § 252(b) of the
Act.  Id. at ¶¶ 18-19.  In its petition, Western identified five
issues remaining for arbitration.  Id. at ¶ 20.  In its response,
Qwest identified ten additional issues for arbitration.  Id. at ¶
20.

        The Arbitrator issued his decision on September 20, 2004.
See Ex. 1, attached to original Complaint.  In his decision, the
arbitrator ordered that Qwest's proposed language be adopted as
to all but one issue.  The arbitration order instructed that
"[w]ithin 30 days of the date of the [PUC's] final order in this
proceeding, Qwest and Western shall submit an interconnection
agreement consistent with the terms of this decision."  Id.
Subsequently, Western filed exceptions to the arbitrator's order.
Supplemental Complaint, ¶¶ 22-23.

        On October 18, 2004, despite Western's exceptions, the PUC
in Order No. 04-600 adopted the arbitrator's decision in its

entirety.  See Ex. 2, attached to the original complaint.  This triggered a statutory requirement for Western, as petitioner, to prepare a compliant interconnection agreement and serve it on Qwest within fourteen days of the order.[1]  Western failed to do so.  Supplemental Complaint, ¶¶ 22-23.  In addition, Western was required to submit a compliant interconnection agreement to the PUC within thirty days, however Western again failed to do so.

Nonetheless, on November 10, 2004, Qwest submitted an interconnection agreement to Western for review.  In response, Richard Oberdorfer, Western's owner, informed Qwest he would be out of town and would not review the document until he returned. Id. at ¶ 25.  Despite this, on November 18, 2004, Qwest timely filed the proposed agreement with the PUC.  The agreement was not signed by Western.

On November 29 and December 1, 2004, Western reviewed Qwest's proposed interconnection agreement, ex. 3, attached to original Complaint, and found some areas "where that document did not comply with the Commission Order."  Id. at 27.

Instead of informing the PUC of its concerns, Western, on February 3, 2005, filed this action.  Western alleged that the district court had jurisdiction over its suit "pursuant to 47

---

[1]"Within 14 days after the Commission issues its arbitration decision, petitioner must prepare an interconnection agreement complying with the terms of the arbitration decision and serve it on respondent. Respondent shall either sign and file the agreement, or file objections to it, within 10 days of service of it."  Or. Admin. R. 860-016-0030(12) (2009).

Page 6 - OPINION AND ORDER

U.S.C. § 252(e)(6), 42 [sic] U.S.C. § 207, and 28 U.S.C. §§ 1331
and 1343(a)."

In its Complaint, Western brought the following causes of
action: (1) PUC's violation of delegated authority, 47 U.S.C. §§
251, 252; (2) Qwest's failure to negotiate the interconnection
agreement in good faith, 47 U.S.C. §§ 251(C), 252(A); (3)
violation of 42 U.S.C § 1983, civil rights/due process against
the Commission and individual defendants; and (4) violation of 42
U.S.C. § 1983 civil rights/equal protection against the
Commission and individual defendants.

The defendants moved to dismiss all causes of action for
lack of subject-matter jurisdiction and failure to state a claim.
See Fed. R. Civ. P. 12(b)(1), (6).  Additionally, Qwest, PUC, and
PUC's Commissioners argued the court lacked jurisdiction because
the PUC had neither approved nor rejected an interconnection
agreement.  Moreover, all defendants argued the court lacked
jurisdiction to consider the "good faith" cause of action because
it had not been decided by the PUC.  The PUC and its
Commissioners also contended that Western's § 1983 causes of
action were barred by the Eleventh Amendment and by absolute and
qualified immunity.

This court, in an opinion and order filed on July 25, 2005,
dismissed the entire action for lack of jurisdiction.  Western
responded by filing an appeal to the Ninth Circuit Court of

Page 7 - OPINION AND ORDER

Appeals ("Ninth Circuit").

After this court's opinion and order issued, Qwest sought PUC approval of the interconnection agreement submitted on November 18, 2004.  On October 10, 2005, the PUC approved the interconnection agreement in Order No. 05-1075, Docket ARB 537.[2] On October 14, 2005, four days after the approval of the interconnection agreement, Western petitioned the PUC for arbitration, Docket ARB 706.  In its petition, Western identified several issues for arbitration, including an allegation that Qwest failed to negotiate in good faith.  On January 3, 2006, however, the PUC dismissed Western's petition.

On July 9, 2008, the Ninth Circuit vacated and remanded this court's opinion dismissing Western's action.  <u>Western Radio Servs. Co.</u>, 530 F.3d 1186 (9th Cir. 2008).  The Ninth Circuit held this court has jurisdiction over Western's good faith claim. However, the Ninth Circuit further held as a prudential matter that prior to filing suit Western must first present Qwest's alleged failure to negotiate in good faith to the PUC.  Finally, the Ninth Circuit instructed this court to inquire whether the PUC had, in fact, addressed the good faith claim.  If it had, then this court should consider whether Western has a cause of

---

[2] This opinion refers to both Docket ARB numbers and order numbers.  A Docket ARB number is a number assigned by the PUC when it receives a petition for arbitration under the Act.  The ARB number is analogous to a case number. An order number is assigned by the PUC to each order issued during an arbitration.

action under 47 U.S.C. § 207 for Qwest's alleged failure to negotiate in good faith.  The Ninth Circuit, however, held that if the PUC had not addressed Western's claim, then prudential concerns required Western to present its claim first to the PUC before bringing suit in district court.

Regarding Western's 42 U.S.C. § 1983 claims, the Ninth Circuit remanded for further proceedings in light of an interconnection agreement approved by the PUC.

<u>STANDARDS</u>

Under Fed. R. Civ. P. 12(b)(6), once a claim has been stated adequately, it may be supported by "showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1960 (2007).  <u>See also</u>, <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1052 (1985).  For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff, and its allegations are taken as true. <u>Rosen v. Walters</u>, 719 F.2d 1422, 1424 (9th Cir. 1983).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss."  <u>In re Stac</u>

Page 9 - OPINION AND ORDER

Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting
In re VeriFone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993)).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
normally limited to the complaint itself.  See Lee v. City of Los
Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  If the district
court relies on materials outside the pleadings in making its
ruling, it must treat the motion to dismiss as one for summary
judgment and give the non-moving party an opportunity to respond.
Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d
903, 907 (9th Cir. 2003).  "A court may, however, consider
certain materials --documents attached to the complaint,
documents incorporated by reference in the complaint, or matters
of judicial notice -- without converting the motion to dismiss
into a motion for summary judgment."  Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then
a court may consider them if their "authenticity is not
contested" and "the plaintiff's complaint necessarily relies on
them."  Lee, 250 F.3d at 688 (citation, internal quotations and
ellipsis omitted).  A court may also treat certain documents as
incorporated by reference into the plaintiff's complaint if the
complaint "refers extensively to the document or the document
forms the basis of the plaintiff's claim."  Ritchie, 342 F.3d at
908.  Finally, if adjudicative facts or matters of public record
meet the requirements of Fed. R. Evid. 201, a court may

judicially notice them in deciding a motion to dismiss. <u>Id.</u> at
909; <u>see</u> Fed. R. Evid. 201(b) ("A judicially noticed fact must be
one not subject to reasonable dispute in that it is either (1)
generally known within the territorial jurisdiction of the trial
court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be
questioned.").

DISCUSSION

Both Qwest and the PUC move to dismiss Western's Second
Cause of Action and request for jury trial.  Additionally, the
PUC moves to dismiss Western's section 1983 claims.

Regarding the Second Cause of Action, both parties assert
that in Docket ARB 537 Western failed to allege that Qwest did
not negotiate in good faith, which was required by the Ninth
Circuit before filing suit in district court.  <u>See</u> <u>Western Radio</u>
<u>Servs. Co.</u>, 530 F.3d 1186.  Additionally, Qwest argues that the
PUC has not addressed such a claim in either Order No. 05-1075 or
06-001 as required by <u>Western Radio</u>.  Moreover, Qwest contends
that Western's petition (Docket ARB 706) was improper, defective,
contained vague statements regarding good faith negotiations, and
failed to ask the PUC to determine whether Qwest negotiated in
good faith as required by <u>Western Radio</u>.

Regarding Western's request for a jury trial, the defendants
assert that a jury trial is inappropriate because this matter is

Page 11 - OPINION AND ORDER

before this court on appellate review of the decisions of the PUC
and is properly reviewed on the record before the PUC.  Finally,
the PUC contends the inclusion of § 1983 claims was an
inadvertent error on behalf of Western's attorney and this fact
was confirmed by Western's attorney on February 11, 2009.

The PUC's determination of Western's good faith claim

In Western Radio, the Ninth Circuit held that a requesting
carrier cannot sue an incumbent local exchange carrier for a
failure to negotiate in good faith until the PUC has addressed
the good faith claim.  530 F.3d at 1189.  The court acknowledged
that while it was unusual to require one private party to exhaust
its administrative remedies before bringing suit against another
private party, policy factors favored this requirement.  Id. at
1199.

The Ninth Circuit instructed this court to determine whether
the PUC in its order approving the interconnection agreement had
"decided the good faith questions Western seeks to litigate, as
well as the ultimate effect of the PUC's decision on the current
litigation."[3]  Id. at 1203.  The PUC issued two orders in this
case (1) Order No. 05-1075, Docket ARB 537, approving the
proposed interconnection agreement submitted by Qwest; and (2)
Order No. 06-001, Docket ARB 706, dismissing Western's petition

---

[3]Although not explicit in its mandate, when the Ninth Circuit referred
to an approved interconnection agreement it was implicitly referring to Order
No. 05-1075, Docket ARB 537, as this is the only order approving an
interconnection agreement between Western and Qwest.

Page 12 - OPINION AND ORDER

for arbitration that Western filed four days after Order No. 05-1075 issued.[4]  I will consider both orders in turn.  Before I do that, it is important to note that each docketed petition for arbitration is a separate case independent of, and different from, any other arbitration proceeding.

(1) Order No. 05-1075 approving Qwest's proposed interconnection agreement

Before specifically discussing Order No. 05-1075 it is noteworthy that both orders precede the Ninth Circuit's mandate. In other words, neither the PUC, its commissioners, nor Western had the benefit of the Ninth Circuit's mandate.  Since the Ninth Circuit's mandate issued, Western has not presented its claim to the PUC.  In Order No. 05-1075, the PUC neither expressly nor impliedly addressed Western's good faith claims.  First, the PUC held:

> [P]arties subject to the 252(b) process are plainly required to go through the steps set forth and are not free to walk away from the arbitrated interconnection agreement if they are displeased with the outcome of the arbitration process before the state commission.  Indeed, if they were free to do so, it would render the concept of compulsory arbitration meaningless.  Section 252(e)(1) provides that 'Any interconnection agreement adopted by negotiation *or arbitration shall* be submitted for approval to the State commission.'

---

[4]The Ninth Circuit took judicial notice of the PUC's Order No. 05-1075 because its existence was "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429, 435 (9th Cir. 1992) (taking judicial notice of the existence of decisions of the California Public Utility Commission on force majeure claims). Likewise, this court takes judicial notice of Order Nos. 05-1075 and 06-001.

An arbitrated interconnection agreement, with the disputed
terms as decided by the Arbitrator and adopted by the
commission, has the same legal power to bind the parties as
if the agreement had been freely entered into by both
parties prior to its submission to the commission.  One
party cannot simply refuse to execute and honor the
agreement because of disappointment with the outcome of the
arbitration proceeding.  The only avenue open to the party
by federal statute is the section 252(e)(6) appeal process
which states: 'In any case in which a State commission makes
a determination under this section, any party aggrieved by
such determination may bring an action in an appropriate
Federal district court to determine whether the agreement or
statement meets the requirements of section 251 and this
section.'

Order No. 05-1075, p. 3-4 (emphasis supplied in original).

Next, the PUC quoted a portion of this court's opinion

regarding the court's lack of subject matter jurisdiction until

the PUC either approves or rejects an interconnection agreement.

Order No. 05-1075, p. 4.  The PUC did not discuss the good faith

claim,[5] presumably because Western failed to present this claim

to the PUC while the proposed interconnection agreement was under

consideration. Western admits this failure.  See Declaration of

Richard Oberdorfer in support of Response to motions to dismiss.[6]

---

[5]A portion of this court's opinion discussing the good faith claim is
quoted in the background section of the order.  However, this only indicates
that it was improper for Western to file suit in federal court before seeking
mediation or arbitration with the PUC.

[6]"I, [Richard Oberdorfer], am not aware of any provision in the PUC's
rules for filing such comments without PUC requesting input.  The PUC approved
the Qwest version without input from Western Radio, and did not do that until
Judge Aiken dismissed the complaint in this matter." Declaration of Richard
Oberdorfer in support of response to motions to dismiss, ¶ 8.  Additionally,
Western asserts that in its petition to initiate Docket ARB 537 it alleged
that Qwest failed to "negotiate an agreement as required by 251(c)(1), the
statute which includes the good faith requirement." Id. at ¶ 2.  However,
this allegation concerns issues arising before arbitration not during.  See 47
U.S.C. § 252(b)(5).

Page 14 - OPINION AND ORDER

<u>See also</u> Ninth Circuit's discussion of how Western likely could have raised this issue to the PUC.  <u>Western Radio Servs. Co.</u>, 530 F.3d at 1198.

In addition, since the Ninth Circuit's mandate, Western has failed to present its good faith claim to the PUC.  Accordingly, the PUC has neither expressly nor impliedly addressed Western's good faith questions that it now seeks to litigate.  The PUC must first do so for prudential reasons as discussed by the Ninth Circuit.  <u>See</u> <u>id.</u> at 1196-1205.

<u>(2) Order No. 06-001 dismissing Western's arbitration petition</u>

Likewise, in Order No. 06-001, the PUC neither expressly nor impliedly addressed Western's good faith claims.  The PUC dismissed Western's petition for arbitration (Docket ARB 706) as improper.  First, it held the petition was improper because it would be inappropriate to allow Western to ignore the recently approved interconnection agreement.[7]  The PUC held:

> Just as it is inappropriate to allow Western to ignore the results of an arbitration proceeding by refusing to enter into an agreement consistent with the Commission's arbitration decision, it is likewise inappropriate for Western to attempt to commence arbitration of a new interconnection agreement only days after the Commission-arbitrated and approved interconnection agreement became effective. As Qwest points out, entertaining Western's Petition would essentially render the Commission's arbitration decisions meaningless. Both parties are expected to abide by the terms and conditions of the Approved

---

[7]An approved interconnection agreement remains in effect for three years.  <u>See</u> Section XXII.B.1, Ex. 3, p. 39, attached to original complaint. Notably, this three-year period has now lapsed.  Accordingly, the parties could renegotiate the approved interconnection agreement.

Agreement until it expires or they voluntarily negotiate a
new agreement.

Order No. 06-001, p. 3.  Second, the PUC held the petition

improper because it was based upon an incorrect assumption that

Qwest had attempted to renegotiate the approved agreement.  The

PUC held:

> The Commission already considered and rejected this argument
> in Order No. 05-1075. There we held: 'We also find that the
> Qwest letter of May 10, 2005, notifying radio carriers that
> it was withdrawing Section 20 of Oregon Tariff 29 as a
> result of the Federal Communications Commission's T-Mobile
> decision [citation omitted] and putting an interim tariff in
> place ... in no way constituted a 'request for negotiation.'
> Order No. 05-1075 at 4.'

Order No. 06-001, p. 3-4.

Nonetheless, Western maintains that in its petition it

"submitted the good faith claim squarely to the PUC," but that

the PUC "refused to address the issues."[8]  Plaintiff's Response

to Qwest's motion to dismiss, p. 5.  In Order No. 06-001 the PUC

neither expressly nor impliedly addressed any of the issues

presented by Western's petition, nor did it address the issue of

Qwest's alleged failure to negotiate in good faith.  Rather, as

---

[8]Western relies on exhibit A attached to Plaintiff's Brief on Remand to
support this assertion.  Notably this document is neither the original
petition nor a copy of the original petition.  In addition, this exhibit
differs in several ways from what is likely the original petition, which is
attached to Qwest's Memorandum in Support of Qwest's Motion to Dismiss.  Most
notably, it is unsigned, it lists the wrong date of submission, it is not
marked as Docket ARB 706, it raises only three issues whereas the document
supplied by Qwest raised five issues, and finally the issues raised are worded
differently than the document supplied by Qwest.  Accordingly, I do not take
judicial notice of this document.  However, regardless of whether judicial
notice of this document is taken it is not dispositive of the issues before
the court.  The PUC in dismissing Western's petition did so on the grounds
that its petition was improper and not based on the substantive issues of the
petition.

Page 16 - OPINION AND ORDER

discussed, it dismissed the petition as improper.

Consequently, the PUC has not made any substantive determination of Western's good faith claim in Order No. 05-1075 or 06-001. Western's efforts have been insufficient to comply with the prudential concerns discussed in the Ninth Circuit's mandate. Accordingly, Western's Second Cause of Action is dismissed because it must first seek relief with the PUC before it brings its good faith claim in this forum.[9]

Western's 42 U.S.C. § 1983 claims

The court notes that Western's most recent complaint does not include a section 1983 cause of action. The PUC asserts Western's inclusion of the 42 U.S.C. § 1983 claim in its caption, paragraphs one and nine, and the prayer were inadvertent error on behalf of Western's attorney. Western concedes this in its response stating that it "regrets the drafting error." Plaintiff's Response, p. 1. Accordingly, the § 1983 claims are dismissed.

Western's request for a jury trial

A jury trial is inappropriate for Western's remaining claim. Western's First Cause of Action requests judicial review to determine whether the PUC's decisions were consistent with 47

_____

[9]Western argues any "procedural defects in [its] presentation of the good faith issue to the PUC ... should be overlooked" because it appeared pro se before the PUC. Plaintiff's Response to Qwest's motion to dismiss, p. 6. This argument is groundless. The PUC dismissed Western's petition because an approved interconnection agreement was already in effect not because of any procedural defects.

U.S.C. §§ 251 and 252.  Accordingly, Western's request for a jury trial is denied.  47 U.S.C. § 252(e)(6).  <u>See also</u> <u>US West Communs., Inc. v. Jennings</u>, 304 F.3d 950, 957 (9th Cir. 2002)("the district court's role under the Act is to determine whether 'the agreement or statement meets the requirements of section 251 [and section 252]'"  (<u>quoting</u> 47 U.S.C. § 252(e)(6)).

CONCLUSION

Defendant Qwest's motion to dismiss (doc. 62) and defendant PUC's motion to dismiss (doc. 60) are granted.

IT IS SO ORDERED.

Dated this  5   day of May 2009.


                              /s/ Ann Aiken
                              Ann Aiken
                    United States District Judge